UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 23-cr-394 (TNM) |
| : | |
| KEVIN QUATTLEBAUM (6), : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Kevin Quattlebaum pled guilty to a two-count information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Cocaine and 28 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), 841(b)(1)(B)(iii), and 846 (Count One); and Using, Carrying, and Possessing a Firearm During A Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two). For the reasons herein, the Government respectfully requests that the Court sentence the Defendant to 147 months of imprisonment, in aggregate across the Defendant's two counts of conviction, followed by four years of supervised release.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant's admitted conduct is part of a broader, multi-year federal investigation. Specifically, the Drug Enforcement Administration commenced an investigation into a drug-trafficking organization that imports into the United States and redistributes fentanyl, cocaine, and other controlled substances. Through the investigation, including wiretap interceptions of the Defendant and his co-conspirators, law enforcement was able to identify the Defendant and others as being involved in this drug trafficking operation. From no later than August 2022 and continuing until about November 2023, the Defendant conspired to, and did in fact, distribute and possess

with intent to distribute cocaine and cocaine base. In aggregate, the converted drug weight for the amount of said mixtures and substances, including the reasonably foreseeable conduct of all the members of the conspiracy known to the Defendant, was no less than 1,000 kilograms but no greater than 3,000 kilograms of converted drug weight.

The Defendant's orientation in the conspiracy was to serve as a bulk redistributor of cocaine and cocaine base to other participants in the conspiracy. Specifically, the Defendant received bulk packages of cocaine in both the District of Columbia and Maryland, which he in turn cut, repackaged, and then sold in smaller quantities to other drug traffickers for redistribution both in and around the District of Columbia.

One of the Defendant's redistributors was co-defendant Michael Stewart, who redistributed the Defendant's narcotics in the District of Columbia. For example, on September 7, 2022, the Defendant called Stewart to arrange a delivery of powdered cocaine to Stewart. During the call, Stewart told the Defendant: "I need you[r] like cooked food, man." The Defendant then clarified: "the soft way?" Stewart confirmed: "Yeah. So I am getting ready, huh?" The Defendant then offered an additional type of cocaine: "I got the hard way whipped, too." Stewart declined, stating: "Nah, I don't need that Kevo, I don't need that. Yeah I don't need that." The two then coordinated a meeting, which took place later that day. In this intercepted communication, which is reflective of the general relationship between the Defendant and Stewart, the "soft way" (powdered) and "hard way" (crack) refer to different preparations of cocaine. Thus, during the call, Stewart solicited powdered cocaine from the Defendant and declined the Defendant's offer of cocaine base at that time.

The Defendant distributed cocaine to other individuals both within and outside the conspiracy, including co-defendant Ronnie Rogers. An example of the Defendant's business

relationship with Rogers comes through an intercepted telephone call on March 19, 2023. During that call, Rogers asked the Defendant "can you, can you bring me that uh." The Defendant then interjected, instructing Rogers to "just text it to me, I'll come." Rogers replied, "OK, alright, alright, cause if, what, are you through tonight, or can you, or you wanna do it tonight or early in the morning cause I need it early." The Defendant insisted upon conducting business as soon as possible, stating "naw, I wanna do it today. Get this shit out of the way." Rogers agreed, stating "alright, come on, come on. I'm in Maryland, I'm in the house in Maryland." In then clarifying what type of product Rogers wanted, the Defendant then also alluded to the co-conspirators' relationship with Stewart: "okay, just text me, say your way or Mike way. My way or Mike Way." Rogers replied: "Mike way, Mike way." In this context, "Mike's way" is co-defendant Michael Stewart's (Mike) preferred type of cocaine, powdered, rather than the crack cocaine ("my way") that the Defendant also trafficked.

A subsequent call between Rogers and the Defendant illustrated the Defendant's access to both types of cocaine. On March 25, 2023, Rogers called the Defendant in an intercepted call, making a request of the Defendant for powdered cocaine: "I'll tell you what you need to do. Bring me four like Mike." The Defendant replied: "ok, ok." Then, on March 30, 2023, the Defendant again distributed cocaine to Rogers, but this time the transaction was for both varieties. Rogers called the Defendant that day asking him to bring Rogers "one like Mike and one like I do," meaning one portion of powdered cocaine and one portion of cracked cocaine. Subsequent intercepted communications later that day confirmed that the two co-conspirators met in person to conduct the transaction.

On November 29, 2023, as part of the coordinated arrest operation in connection with this investigation, law enforcement officers executed a search warrant at the Defendant's residence in

Upper Marlboro, Maryland. The Defendant was discovered in the residence and placed under arrest. The subsequent search of the residence resulted in the recovery of the tools of the trade for a drug trafficker. Recoveries included approximately 6.5 kilograms of cocaine, 14 grams of cocaine base, more than $35,000 in U.S. currency, and an FN 5.7 mm high velocity handgun capable of penetrating body armor.

On July 22, 2025, the Defendant accepted responsibility for his participation in the above-described drug trafficking conspiracy, pleading guilty before the Court to a two-count superseding information. ECF No. 83. Specifically, the Defendant pleaded guilty to conspiring to distribute and possess with the intent to distribute 500 grams or more of cocaine, as well as 28 grams or more of cocaine base. The Defendant further pleaded guilty to possessing a firearm in furtherance of his drug trafficking.

## **STATUTORY PENALTIES**

Pursuant to Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846, Count One of the Superseding Information carries a mandatory minimum term of five years of imprisonment and a maximum term of 40 years imprisonment, a fine not to exceed $5,000,000, and a term of supervised release of at least four years.

Pursuant to Title 18, United States Code, Section 924(c)(1)(A)(i), Count Two of the Superseding Information carries a mandatory minimum term of five years of imprisonment, to be imposed consecutively to any other count of conviction, a maximum term of life imprisonment, a fine not to exceed $250,000, and a term of supervised release of no greater than five years.

**SENTENCING GUIDELINES**

The Government concurs with the Pre-Sentence Report's [ECF No. 123] (the "PSR") calculation that the Defendant has three criminal history points, resulting in a Criminal History Category of II under the United States Sentencing Guidelines (the "Guidelines"). PSR at ¶ 69.

The Government also concurs with the PSR that the Defendant's base offense level for Count One is 30, before any downward adjustments, and that the Defendant accepted responsibility early enough in the case so as to qualify for a three-point reduction to his offense level. PSR at ¶¶ 58-63. Thus, based upon the final PSR released on October 10, 2025, the resultant total offense level of 27, along with a Criminal History Category of II, results in a corresponding range of imprisonment for Count One under the Guidelines of 78 months to 97 months, with a mandatory minimum of 60 months of imprisonment to be imposed.

With respect to Count Two, the applicable guidelines are set forth in U.S.S.G. § 2K2.4(b), which requires that the minimum term of imprisonment, 60 months, be imposed consecutively to any other sentence, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). Thus, in aggregate, the Defendant's recommended Guidelines range is 138-157 months imprisonment, with a mandatory minimum term of imprisonment of 120 months, in aggregate, required by statute.

Consistent with the terms of the parties' plea agreement, the Government has agreed to cap its allocution at the midpoint of the Defendant's aggregate applicable Guidelines range, which is 147 months of imprisonment. ECF No. 85, § 5.

**LEGAL PRINCIPLES**

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). Indeed, the Guidelines themselves are designed to calculate

5

sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 348-50 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. *Booker*, 543 U.S. at 245. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See Gall*, 128 S. Ct. at 598 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. *See Rita*, 551 U.S. at 338; *see also* United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 438 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations

that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." *Booker*, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1). The Guidelines themselves thus seek to implement—in a fair and uniform way—the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in *Gall*. *See Gall*, 552 U.S. at 50.

## ARGUMENT

A sentence of 147 months of imprisonment is appropriate in light of the seriousness of the offense. The Government's recommended sentence is also designed to deter others, promote respect for the law, and offer rehabilitation to the Defendant.

1. **The Nature, Circumstances, and Seriousness of the Offense**

The count to which the Defendant pleaded guilty is serious. The Defendant was a member of a large drug trafficking conspiracy involving at least eight individuals, as reflected in the indictment in this case. The Defendant has agreed that he is accountable for distributing and possessing with the intent to distribute bulk quantities of cocaine base and cocaine.

The Defendant's ongoing participation in a multi-year drug trafficking conspiracy demonstrates that the Defendant was indifferent to the destruction he and his co-conspirators were causing to the users of their illegal narcotics and to the community at large. Both powdered and

crack cocaine are significant barriers to individual and communal prosperity, public health, and community safety. Drug abuse and addiction contributes to the decay of our society and community and accounts for tens of thousands of deaths in this country each year. The will of the Defendant to continually make himself an available gateway for these drugs to enter the community shows his clear disregard for the individuals in the community and his paramount desire to make personal profit.

    2.    **The Defendant's History and Characteristics**

While the parties agree that the PSR accurately computes the Defendant's criminal history score, the vagaries of how prior convictions are scored under the Guidelines result in a criminal history category that understates the Defendant's lengthy criminal history. The Defendant's adult criminal history dates back to 1986 narcotics conviction in D.C. Superior Court. PSR at ¶ 65. This is not the Defendant's only narcotics conviction; he was most recently sentenced in this Court in Case No. 07-cr-235 to 126 months imprisonment in 2008 for possession with intent to distribute 50 grams or more of cocaine base, under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). Notably, both of these convictions, 22 years apart, involved the narcotics for which the Defendant has accepted responsibility for trafficking in the instant case. In the intervening time between the 1986 cocaine conviction and the 2008 federal drug trafficking conviction, the Defendant had two other convictions, including on an ammunition charge in 2002.

In addition to the Defendant's prior convictions, he has numerous prior arrests that reinforce the perception of the Defendant's recidivism. Specifically, the Defendant has been arrested seventeen additional times that did not result in convictions, including for assault with a deadly weapon, armed robbery, and other firearms-related offenses. PSR at ¶¶ 68-87

Beyond the Defendant's recidivism outside of the criminal justice system, he has also incurred numerous infractions while in prison. Specifically, while incarcerated, the Defendant has

received twelve disciplinary actions for various offenses including: possessing a dangerous weapon, fighting, possessing drug/alcohol, and escape. PSR at ¶ 68.

### 3. The Need to Promote Respect for the Law and Deterrence

The Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). Perhaps more than any other factor, the need to deter narcotics trafficking of dangerous drugs and the use of firearms in furtherance thereof weighs most heavily in favor of a sentence within the applicable guidelines range, while still adhering to the parties' agreement that the Government request no greater than the midpoint of the Defendant's aggregate Guidelines range. As the Court is well aware, drug trafficking is an inherently dangerous business, and this danger is only amplified by the introduction of firepower, as the Defendant possessed here. Given the attendant harms to the community, the Defendant's sentence should disincentivize others from engaging in similar criminal conduct.

### 4. Other factors

Given the catastrophic impact of drugs on our community, a sentence of 147 months imprisonment is warranted. Too many people do not understand or fear the consequences to themselves or their community that flow from this behavior, and they must understand that profiting off their fellow community members' addiction is unacceptable.

Further, the Government's requested sentence will hopefully provide the Defendant the skills and incentives he needs to make better choices and avoid criminal behavior in the future. Specifically, it will provide the Defendant with an adequate amount of time to take advantage of many of the programs offered by the Bureau of Prisons (BOP). These programs are designed to provide the Defendant with these aforementioned skills to hopefully discourage recidivism and re-enter society as a contributing member. The Probation Office has researched and identified

available programs within the BOP, and the Government hopes that the Defendant will take full advantage of those programs during his incarceration. PSR at ¶ 164.

## CONCLUSION

The Defendant participated in a drug trafficking conspiracy that flooded the community with cocaine, fentanyl, and other extremely addictive narcotics. The Defendant accepted responsibility for his participation therein and was personally in possession of kilogram quantities of cocaine at the time of his arrest. The Defendant's conduct is serious and merits a commensurate sentence. The Government respectfully recommends that the Court sentence the Defendant to 147 months of imprisonment, followed by four years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: /s/ Matthew W. Kinskey
MATTHEW W. KINSKEY
GEORGE P. ELIOPOULOS
Assistant United States Attorneys
D.C. Bar No. 1031975 (Kinskey)
D.C. Bar No. 390601 (Eliopoulos)
United States Attorney's Office
Violent Crime & Narcotics Trafficking Section
601 D Street, NW
Washington, D.C. 20530